IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05cr290-WKW-WC |
| | ) | |
| EDDIE ANDREW GORDON | ) | |

<u>UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS</u>

Comes now the United States of America by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and submits the following response to the defendant's motion to suppress (Doc. 86):

**<u>Procedural History and Facts</u>**

On November 22, 2004, Montgomery Police Officer Lance R. Gambrel was dispatched to the Coliseum Inn, located at 1550 Federal Drive, in reference to a citizen who wanted to speak with a police officer.  Officer Gambrel met a female in the parking lot of the Coliseum Inn, who had identified herself as Lynn Jordan to the 911 operator .  The female told Officer Gambrel that she was missing property from her house and that she believed her son was responsible for the theft because he was addicted to crack cocaine and frequented the Coliseum Inn in Room 103. She also told Officer Gambrel that she was afraid to approach the room because she feared that drug dealers could be present.  She asked Officer Gambrel if he would approach Room 103 and ask for her son so that she could speak to him in the parking lot about her property.

Officer Gambrel approached Room 103 and noticed that the door to the room was open. Officer Gambrel could see a person, later identified as Eddie Andrew Gordon ("Gordon"), laying one of the two beds in Room 103.  According to Officer Gambrel, he knocked on the door

because the defendant did not notice his presence at the opened door.  Officer Gambrel initially spoke to Gordon standing outside of the opened door.  As Officer Gambrel began to explain the purpose of his visit, he saw what appeared to be drugs and drug paraphernalia in plain view.

     Officer Gambrel saw a compact disc with the shiny side facing up near Gordon's right hand.  There were off-white rocky crumbs and powdery residue, believed to be crack cocaine, on the disc, along with a razor blade.  Officer Gambrel saw a "blunt" next to the compact disc.[1]  A hollow glass pipe with off-wite residue inside and a torn brillo pad were on top of the dresser.  Officer Gambrel knew that the pipe was commonly used as a "crack pipe."  At this point, Officer Grambel had not entered the room.

     Officer Gambrel asked Gordon to step outside and speak with him in the parking lot.  As Gordon came out of the room, Officer Gambrel saw that Gordon was extremely nervous, breathing heavily and his hands were shaking.   In response to questions from Officer Gambrel, Gordon stated that Room 103 was his room and he had been staying in Room 103 for a "few months."  Officer Gambrel asked Gordon for his consent to search the room.  Gordon stated, "Yea, you can search my room if you want to...a dude came by and wanted to give me some stuff but I told him I didn't want none of it."

     Officer Gambrel entered the room and immediately seized the drugs and drug paraphernalia evidence which he had observed in plain view.  Officer Gambrel then searched the room and found a semi-automatic .22 caliber pistol laying on top of the bed spread and underneath a towel.  The pistol was to the immediate right of where Defendant Gordon had been

---

[1] A "blunt" is the result of removing some or all of the tobacco from a small cigar and replacing it with marijuana.

laying.  A clear plastic bag filled with an off-white rocky substance, believed to be crack cocaine, and a plastic bag containing a green leafy substance, believed to be marijuana, were found in an open night-stand drawer on the opposite side of the room.  Officer Gambrel seized all drug evidence and the firearm.  Gordon was placed under arrest for possession of a controlled substance.

Defendant Gordon provided a post-Miranda statement to Detective W. B. Hamil, in which he stated that when the police arrived at his apartment, he was laying on the bed.  Gordon stated that he opened the door and told the officer to "come on in." Gordon stated that the officer told him he was investigating a burglary and theft, and that when he told the officer to come on in, "the lady came in too." Gordon admitted that he rented the room and shared it with a person named [Tavian] Jackson.  Gordon stated that the officer was looking for a stereo but also acknowledged that there was marijuana and crack cocaine "on top of the bed."[2]  Gordon only claimed ownership to the "blunt."  He also acknowledged that they were investigating a burglary and theft.  According to Gordon, the officer asked for a person named Randy, and he told him that there was no Randy there.  According to Gordon, the officer asked for consent to search his room and he did consent to the search.  He said they asked if they could search the room for a stereo.  Gordon said that the officer and the lady went into the room and came back out.  Gordon said that the officer then told him that he did not want him to be "standing outside like that", and placed him in the patrol car.  The officer went back into the room and came back out with the marijuana, cocaine and a firearm.  Officer Gambrel did not find the complainant's son or any of

---

[2]    Defendant Gordon admitted that the crack cocaine and marijuana were in the room.  However, he denied ownership of the controlled substances.

3

her property in Room 103.

**<u>Legal Argument</u>**

The defendant contends that the officer's search of Gordon's room exceeded the scope of the consensual search. The government submits that the defendant provided a general consent to search. Notwithstanding the consent to search, Officer Gambrel saw what he believed to be controlled substances in plain view through an open door, which he was authorized to seize.

The fourth amendment protects the people against "unreasonable" searches and seizures. *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992). Therefore, a warrantless entry into a suspect's home to search the premises is presumed to be unreasonable.[3] *United States v. Ramirez-Chilel*, 289 F.3d 744 (11th Cir. 2002), *(citing United States v. Tobin*, 923 F.2d. 1506, 1510 (11th Cir. 1991), and *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, emphasis added). However, an exception to a warrantless entry into a suspect's home is voluntary consent to search. In the instant case, the defendant has not challenged the voluntariness of his consent. Further, there is no evidence that the consent was the result of a show of authority. *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986). Therefore, the issue is the scope of the consensual search. *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990). In *Strickland*, the Eleventh Circuit held that a consensual search is confined to the terms of its authorization. *Strickland* at 941. The scope of the actual consent to search restricts the permissible boundaries of a search in the same manner as the specifications in a warrant. *Id.* However, the court went further to say that,

---

[3]    Room 103 of the Coliseum Inn is presumed to be the defendant's resident since he had been living there for a few months.

> When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass. (citing United States v. Blake 888 F.2d 795, 800-01, (11th Cir. 1989)).

In the instant case, Officer Gambrel's search was not unreasonable under the totality of the circumstances. According to the defendant, he opened his room door and told the officer to "come on in." The officer then asked his permission to search the room in reference to a burglary and theft, that is, to look for a stereo. According to Officer Gambrel, he asked the defendant for permission to search the room regarding the burglary and theft of the woman's house, without stating a specific item.

Notwithstanding, "[i]t is well settled that under certain circumstances the police may seize evidence in plain view without a warrant." Horton v. California, 496 U.S. 128, 134 (1990). However, "it is ...an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from where the evidence could be plainly viewed." Id. at 136. In addition to the evidence being in plain view, the incriminating nature of the evidence must be "immediately apparent." Id.

Officer Gambrel saw what he believed to be crack cocaine and marijuana laying on the bed where the defendant was laying. The incriminating character of the evidence was readily apparent to Officer Gambrel immediately. Defendant Gordon consented to the search of his room. Officer Gambrel's arrival at the place from which viewed the incriminating evidence was in response to a citizen's call for help. The door through which Officer Gambrel saw the controlled substances in plain view was already open. Therefore, the two conditions of a

warrantless seizure were satisfied.

The government does not concede that the officer's search exceeded the limits of the consent to search. The government submits that the evidence had already been discovered or seen in plain view. Therefore, Officer Gambrel was justified in making an arrest of the defendant for possession of controlled substances. In *Chimel v. California* 395 U.S. 752 (1969), the Supreme Court held that it is reasonable for the arresting officer to search a person who has been placed under arrest in order to remove weapons, to prevent concealment or destruction of evidence. At the moment that Officer Gambrel saw controlled substances on Gordon's bed, a decision was made to arrest Gordon.

**Conclusion**

Based upon the totality of the circumstances of these facts, Officer Gambrel did not exceed the scope of the general consent to search Gordon's room. In addition, Officer Gambrel was permitted to search the room incident to his lawful arrest of Gordon to prevent the destruction and concealment of evidence.

Respectfully submitted on this 5th day of January 2007.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Tommie Brown Hardwick
> TOMMIE BROWN HARDWICK
> Assistant United States Attorney
> One Court Square, Suite 201
> Montgomery, AL 36104
> Phone: (334) 223-7280
> Fax: (334) 223-7135
> E-mail: tommie.hardwick@usdoj.gov
> ASB4152 W86T

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:05cr290-WKM-WC |
| | ) |
| EDDIE ANDREW GORDON | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Everett M. Urech.

    Respectfully submitted,

    LEURA G. CANARY
    UNITED STATES ATTORNEY

    /s/ Tommie Brown Hardwick
    TOMMIE BROWN HARDWICK
    Assistant United States Attorney
    One Court Square, Suite 201
    Montgomery, Alabama 36104
    Telephone: (334) 223-7280
    Fax: (334) 223-7135
    E-mail: tommie.hardwick@usdoj.gov