IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | |
| v.                        ) | CR. NO. 2:05cr290-WKW [WO] |
| ) | |
| EDDIE ANDREW GORDON       ) | |
| ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The case is currently pending on a motion to suppress evidence filed by Defendant. Defendant seeks suppression of evidence, specifically a semi-automatic .22 caliber pistol found laying underneath a towel, which was sitting on top of a bed next to drugs and drug paraphernalia. Upon consideration of the motion and the testimony at the evidentiary hearing, the Magistrate Judge RECOMMENDS that the motion be DENIED.

**I. FACTS**

Based on testimony at the hearing held on January 18, 2007, and to a preponderance of the evidence,[1] the Court finds as follows: On the afternoon of November 22, 2004, Montgomery Police Officer Lance R. Gambrel was dispatched to the Coliseum Inn in response to a 911 call from a female caller who wanted assistance in recovering missing property. Tr. at 5-6, 13-14, 16.[2] Officer Gambrel approached Ms. Jordan sitting in her car

---

[1]The court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. United States v. Beechum, 582 F.2d 898, 913 n.16 (5th Cir. 1978), citing Lego v. Twomey, 404 U.S. 477, 489 (1972).

[2]The female caller was later identified as Lynn Jordan (" Ms. Jordan") by her testimony at the
(continued…)

in the parking lot of the motel. Tr. at 7, 14. Ms. Jordan indicated that her son, a crack cocaine addict, previously had broken into and taken property from her home. Tr. 15.[3] She further expressed her belief that her missing property was in Room 103 of the motel, a room her son frequented. Tr. at 4-5, 15. Ms. Jordan told Officer Gambrel that she was afraid to approach the room. Tr. at 15. She requested that Officer Gambrel approach the room and ask for her son. Tr. at 15. If her son was present, Ms. Jordan requested that Officer Gambrel ask her son to come outside to speak with her. Tr. at 15.

Officer Gambrel approached Room 103 and noticed that the door was partially open. Tr. at 7, 15. From the doorway, Officer Gambrel saw Eddie Andrew Gordon ("Gordon" or "Defendant") laying on top of one of the beds watching television. Tr. at 16. He also saw what he thought was cocaine residue and a razor blade sitting on top of the shiny side of a compact disk ("CD") and a "blunt" –a hand-rolled marijuana cigarette –next to Gordon's right hand on the bedspread. Tr. at 16-17.[4] Officer Gambrel further saw what he thought was a crack pipe and some Brillo on top of a dresser. Tr. at 16, 18. Defendant did not notice Officer Gambrel standing at the doorway. Tr. at 16. Officer Gambrel banged on the door and announced that he was a police officer and the reason for his visit. Tr. at 16, 19, 28, 46.

---

[2](...continued)
hearing. Tr. at 4-5, 13.

[3]The Court notes that during the hearing, Officer Gambrel could not remember whether Ms. Jordan described the missing property. Tr. at 23-24.

[4]At the hearing, Officer Gambrel testified that he has been a police officer with the Montgomery Police Department for four years. Tr. at 21.

In response to Officer Gambrel's request, Gordon eventually came to the door and walked outside to talk with him. Tr. at 16-17. Gordon appeared nervous; his hands were shaking, and he was breathing heavily. Tr. at 33. Officer Gambrel asked Gordon whether Room 103 was his room. Tr. at 17. Gordon responded affirmatively and indicated that he had been staying in the room for some time. Tr. at 17. After calling for backup, Officer Gambrel then asked Gordon whether he could search the room. Tr. at 17-18. Gordon gave Officer Gambrel permission to search the room. Tr. at 17-18. Officer Gambrel testified that he asked to search the room because it was his intention to enter the room and secure the evidence he had seen. Tr. at 18. But, Officer Gambrel could not remember at the hearing if he told Gordon why he wanted to search his room.[5] Tr. at 36.

Upon entering the room, Officer Gambrel walked immediately over to the bed where Gordon was laying. Tr. at 18. On the bed, he again observed the CD containing cocaine residue and a razor blade and a "blunt." Tr. at 18. Officer Gambrel testified that he had concerns about spilling some of the cocaine residue onto the bedspread. Tr. at 45. Next to the CD, Officer Gambrel saw a towel. Tr. 18-19. He testified that he first collected the CD

---

[5] At the hearing, Defendant testified that Officer Gambrel stated he was looking for a stereo when he asked permission to search Defendant's room. Tr. at 46. The Court does not find Defendant's testimony credible. See United States v. Castro, 723 F.2d 1527, 1533 (11th Cir. 1984). During the hearing, Defendant made inconsistent statements concerning the drugs in question. Cf. Tr. at 54 (testifying that he only knew a "blunt" was on the bed) with Tr. at 54 ("I did[] [not] have knowledge of nothing being in no plain."); Tr. at 54 (testifying in a follow-up question, "Right. I just said that I admitted it about the 'blunt.'"). This testimony also contradicted his post-*Miranda* statement to police. In his statement, Defendant states that he knew the firearm, "blunt," and crack residue were sitting out on the bed. Pl.'s Exh. 2 at 3-4. Thus, the Court questions the veracity of his testimony and statement to police and give those evidentiary items little weight.

and its contents. Tr. at 18. To secure the collection of this evidence, he picked up the towel with the intention of moving it out of the way, rather than searching underneath it. Tr. at 18, 43. The officer found a semi-automatic .22 caliber pistol underneath the towel. Pl.'s Response to Def.'s Motion to Suppress (Doc. #94) at 2; see Def.'s Motion to Suppress (Doc. #86) at 2. After collecting the firearm, Officer Gambrel walked across the room and collected the crack pipe and some Brillo. Tr. at 18. He then retrieved two plastic bags containing what he thought was marijuana and crack cocaine sticking out of an open dresser drawer. Tr. at 18. Officer Gambrel arrested Gordon for possession of a controlled substance. Pl.'s Response to Def.'s Motion to Suppress (Doc. #94) at 3.

Gordon made a post-*Miranda* statement to a detective, in which he stated that he told Officer Gambrel that he "did [not] have a problem with [searching the room], go ahead." Pl.'s Exh. 2 at 2. Gordon admitted in his statement to the police that the firearm, a "blunt," and crack cocaine were sitting on the bed. Id. at 3-4.

## II. DISCUSSION

At the hearing, counsel for Defendant stated that his client does not contest the admission of the drug and drug paraphernalia evidence. Tr. at 56. Defendant only argues that the consent he gave to Officer Gambrel was limited to a search of the room for a stereo. Thus, the officer's search underneath the towel exceeded the scope of the consent provided, and the Court should suppress the firearm as evidence. Def.'s Motion to Suppress (Doc. # 86) at 2-3. The Government counter argues that Defendant generally consented to the search

of his room. Pl.'s Response to Def.'s Motion to Suppress (Doc. 94) at 4. The Court finds that the officer discovered the firearm inadvertently while collecting the drug and drug paraphernalia evidence; this inadvertent discovery did not constitute a search, as the officer merely saw what was placed before him in plain view.[6]

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[7] The Amendment's primary purpose is to protect citizens from unwarranted governmental intrusion and to prevent abusive police power. See Johnson v. United States, 333 U.S. 10, 13 (1948); United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (plurality opinion).

The "plain-view" doctrine is often considered an exception to the general rule that warrantless searches and seizures are presumptively unreasonable. See Horton v. California, 496 U.S. 128, 135 (1990) ("Where the initial intrusion which brings the police within plain view of . . . an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate."). The "plain-view" exception applies when (1) the officer did not violate the Fourth Amendment in arriving at the place

---

[6] Thus, the Court does not need to reach Defendant's argument.

[7] The entire text of the Amendment provides:

> [T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV.

5

where the evidence could be plainly viewed, (2) the item is in plain view, and (3) the incriminating character of the evidence is immediately apparent. Id. at 136; United States v. Hromada, 49 F.3d 685, 690 n.11 (11th Cir. 1995). Indeed, it is well established that the "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." Harris v. United States, 390 U.S. 234, 236 (1968). The Court finds these conditions satisfied here.

1. The Arrival at the Place where the Evidence Could Be Plainly Viewed

"It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton, 496 U.S. at 136. Officer Gambrel went to the Coliseum Inn in response to a 911 call from Ms. Jordan seeking assistance. After taking Ms. Jordan's request for assistance in locating her son in Room 103, Officer Gambrel approached Defendant's room. He looked into the room through the open door and observed what he believed was a "blunt" containing marijuana as well as cocaine residue sitting on a CD with a razor blade laying out on the bedspread. He then saw a crack pipe and some Brillo laying on a dresser.

Officer Gambrel only entered Room 103 after receiving consent from Defendant to search the room. At the hearing, Officer Gambrel testified that when he approached the drug and drug paraphernalia evidence sitting on the bed, he noticed a towel was laying on the bedspread immediately next to the evidence. Officer Gambrel stated that it was not his

6

intention to search underneath the towel. Rather, he testified that he picked up the towel under which the firearm was located to move out it out of the way. He also indicated that he had concerns about spilling the cocaine residue onto the bedspread. The Court finds the officer's testimony credible.[8] See United States v. Castro, 723 F.2d 1527, 1533 (11th Cir. 1984) (indicating that the district court weighs the evidence and the credibility of witnesses). Additionally, Defendant does not contest the admissibility of the drugs and drug paraphernalia evidence. Because Defendant gave the police permission to search his room and Officer Gambrel entered the room for the purpose of collecting what he believed were drugs and drug paraphernalia he observed in plain view, the Court finds that Officer Gambrel was lawfully in Defendant's room at the time the firearm was inadvertently discovered. See Welsh v. Wisconsin, 466 U.S. 740, 749 (1984) (indicating that absent probable cause and exigent circumstances, the Fourth Amendment prohibits police from entering a suspect's home without consent to make a warrantless felony arrest) (emphasis added); Payton v. New York, 445 U.S. 573, 590 (1980).

   2.   The Items in Plain View

During the hearing, Officer Gambrel testified that from the doorway, he saw what he believed was a "blunt" and cocaine residue as well as a razor blade and a CD sitting out on top of the bed. He also testified that he saw a crack pipe and some Brillo sitting on a dresser in the room. Officer Gambrel testified that when he approached the bed, he noticed a towel

---

[8]The Court notes that at the hearing, counsel for Defendant conceded that there would be no search of the towel if the Court accepted the officer's recitation of the facts. Tr. at 59-60.

was laying on the bedspread immediately next to the "blunt" and CD containing the razor blade and cocaine residue. Officer Gambrel moved the towel under which the firearm was located to move out it out of the way. The officer also testified that he had concerns about spilling the cocaine residue onto the bedspread. Because the Court finds the officer's testimony credible, it holds that Officer Gambrel merely discovered the firearm inadvertently while collecting the drug and drug paraphernalia evidence. In other words, Officer Gambrel merely saw what was placed before him in full view; the officer did not conduct a search of the room to find this evidence. See Frazier v. Cupp, 394 U.S. 731, 740 (1969) (concluding that clothing found in a bag in which consent to search was provided could be introduced into evidence because the clothing was found in the course of an otherwise lawful search); see also Harris v. United States, 390 U.S. 234, 236 (1968); Ker v. California, 374 U.S. 23, 42-43 (1963); United States v. Lefkowitz, 285 U.S. 452, 465 (1932); United States v. Lee, 274 U.S. 559 (1927); People v. West, 144 Cal. App. 2d 214 (1956).

      3.    The Incriminating Character of the Evidence is Immediately Apparent

The definition of the term "immediately apparent" has been the subject of some debate within the Supreme Court. See Texas v. Brown, 460 U.S. 730, 741 (1983) (plurality opinion) ("[T]he use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine."). Disputes over the term's meaning primarily arise in cases in which law

enforcement officers have had to conduct additional examinations in order to determine the import of an object. United States v. Pindell, 336 F.3d 1049, 1055 (D.C. 2003), citing Horton, 496 U.S. at 136-37.

It is clear, however, that the "immediately apparent" requirement is satisfied if the officers have probable cause to believe that the item viewed is evidence of a crime or contraband. See Arizona v. Hicks, 480 U.S. 321 (1987); Pindell, 336 F.3d at 1055. See also United States v. Roberts, 619 F.2d 379, 381 (5th Cir. 1980) ("Police officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination."). Under the "probable cause" standard, the facts available to an officer must "warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . . or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. at 742. See United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990) (noting that probable cause does not demand that an officer be "sure" or "certain," but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be useful as evidence). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Texas v. Brown, 460 U.S. at 742 quoting Brinegar v. United States, 338 U.S. 160, 176 (1949).

The Court finds that the incriminating nature of the firearm was immediately apparent to Officer Gambrel when he picked up the towel. During the hearing, Officer Gambrel

testified that he has been a law enforcement officer with the City of Montgomery for four years. Thus, the incriminating nature of a firearm became immediately apparent to this experienced law enforcement officer. The Court finds that Officer Gambrel had probable cause to believe that the firearm was useful as evidence of a crime. United State v. Flores, 193 Fed. Appx. 597, 604 (6th Cir. 2006) (finding that the criminal nature of the gun was immediately apparent); United States v. Virgil, 444 F.3d 447, 452 (5th Cir. 2006) (same); United States v. Wells, 98 F.3d 808, 810 (4th Cir. 1996) (same); see also e.g., Texas v. Brown, 460 U.S. at 733, 742-43 (holding that the criminality of a knotted, opaque "party balloon" found in defendant's hand during a traffic stop was "immediately apparent" because the officer had probable cause to believe that the balloon contained an illegal substance); United States v. Garner, 907 F.2d 60 (8th Cir. 1990) (plain view doctrine justified seizure of evidence in defendant's yard where officer was not sure whether plants were marijuana until he entered the garden and plucked and examined a leaf); United States v. Grubczak, 793 F.2d 458 (2d Cir. 1986) (plain view exception applied where officer picked up and examined a lock-picking case after concluding that the case contained lock-picking tools).

Based on the foregoing, the Court concludes that Officer Gambrel did not conduct a search of Defendant's room at the time that he discovered the firearm. Rather, the officer found the firearm inadvertently while securing the drug and drug paraphernalia evidence discovered in plain view. Because the officer discovered the firearm inadvertently, the "plain view" doctrine justified the seizure of the firearm. See Horton, 496 U.S. at 136; Harris, 390

U.S. at 236; Ker v. California, 374 U.S. at 42-43

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to suppress (Doc. # 86) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation within a period of 13 days from the date of mailing or transmittal to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this the 6th day of February, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE